IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RADIOLOGICAL SOCIETY OF NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, SEVERALLY SUBSCRIBING TO POLICY NO. RSC-1224 AND KNOWN AS ARGO MANAGING AGENCY LIMITED AND MARKEL, <br><br> Defendants. | No. |

## **COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**

Plaintiff Radiological Society of North America, Inc. ("RSNA"), by and through its undersigned counsel, brings this Complaint for Declaratory Judgment and Damages against Defendants, Those Certain Underwriters at Lloyd's of London ("Lloyd's"), Severally Subscribing to Policy No. RSC-1224 and known as Argo Managing Agency Limited and Markel ("Defendants"), and states as follows:

## **NATURE OF ACTION**

1. This lawsuit arises out of Defendants' continued refusal to honor their insurance obligations to RSNA under Defendants' Event Cancellation Insurance, Policy No. RSC-1224, which was issued by Defendants to RSNA for the period January 29, 2020 to December 4, 2020 (the "Policy"). The Policy provides event cancellation insurance for the RSNA 2020 Scientific Assembly, which was scheduled to be held between November 17, 2020 and December 4, 2020 in Chicago, Illinois (the "Event").

VP/#42037184

2. Under the Policy, Defendants promised to indemnify RSNA for all covered losses arising from an unexpected cause beyond RSNA's control and which resulted in, among other circumstances, the unavoidable: (i) cancellation of the Event; (ii) non-appearance of a principal speaker or the like; or (iii) "Enforced Reduced Attendance" (as the term is defined in the Policy) at the Event.

3. On May 26, 2020, RSNA cancelled the Event and notified Defendants that, as a result of various federal, state, local and/or company restrictions on travel and mass gatherings (the "Travel and Mass Gathering Restrictions"), it was impossible, and very likely illegal, to proceed with the Event as planned.

4. Between May and October 2020, RSNA provided Defendants with additional details concerning both the claim and the extent of its losses in relation to the cancelled Event.

5. In November 2020, Defendants denied coverage related to RSNA's request for indemnification for losses related to the cancelled Event.

6. According to Defendants, the alleged rationale for their coverage determination was because an exclusion in the Policy supposedly barred Defendants from indemnifying RSNA for any Event-related loss after the World Health Organization ("WHO") declared a pandemic on March 11, 2020.

7. However, a fair and impartial reading of the Policy's terms—and, specifically, the exclusion at issue and its related extension of coverage in the next paragraph (in other words, an exception to the exclusion)—results in nothing less than outright confusion, particularly when such contradictory terms are read in favor of RSNA as the Named Insured. Indeed, a reasonable interpretation of the two paragraphs is that the exclusion at issue is nullified by its related extension of coverage, at least upon the declaration of a pandemic.

- 3 -

8. By refusing to fully indemnify RSNA for all of its losses in connection with the cancelled Event (up to the Policy's $30,000,000 limit of indemnity for the Event), Defendants are in breach of the Policy.

9. For these reasons, RSNA brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain a declaration concerning its respective rights and Defendants' obligations under the Policy, as well as any further damages and other relief that the Court may deem appropriate.

## **PARTIES**

10. RSNA is an Illinois not-for-profit corporation with its principal place of business located at 820 Jorie Boulevard, Oak Brook, Illinois 60523. Accordingly, RSNA is a citizen of Illinois.

11. Defendants are a group of three underwriters for Lloyd's, severally subscribing to Policy No. RSC-1224 and identified in the Policy as: (i) Argo Managing Agency Limited, with its principal place of business at Exchequer Court, 33 St. Mary Axe, London, United Kingdom, EC3A 8AA; and (ii) Markel, 20 Fenchurch Street, London, United Kingdom, EC3M 3AZ. Accordingly, and on information and belief, Defendants are citizens of the United Kingdom.

## **JURISDICTION AND VENUE**

12. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between the parties.

13. This action is ripe for adjudication because Defendants are in breach of their obligations under the Policy as a result of their refusal to indemnify RSNA for its losses related to the cancelled Event (up to the Policy's $30,000,000 limit of indemnity for the Event).

14. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202. There is diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because: (i) Defendants are, for venue purposes, subject to personal jurisdiction of the United States District Court for the Northern District of Illinois (the "Northern District") at the time this action is commenced; specifically, this action arises from Defendants' contracting to insure RSNA, and delivering the Policy to RSNA, in Illinois; and/or (ii) a substantial part of the events or omissions giving rise to this insurance dispute arose in the Northern District; namely, that RSNA seeks a declaration of its rights and Defendants' obligations under the Policy with respect to the cancelled Event, which was to take place in Chicago, Illinois.

## FACTUAL STATEMENT

**A.    The Policy**

16. In consideration for premiums paid by RSNA, Defendants issued the Policy to RSNA for the Policy Period January 29, 2020 (as the Insurance Effective Date) to December 4, 2020. A true and correct copy of the Policy is attached hereto as Exhibit A.

17. The Policy provides, in relevant part, that, "in consideration of the premium specified herein, [Defendants] do hereby bind themselves, each for his own part and not one for the other, their heirs, executors and administrators, to insure in accordance with the terms and conditions contained herein or endorsed hereon."

18. The Policy's General Insurance Clause states that, "[i]n consideration of the premium paid, in reliance upon the statements in the application attached and made a part of this insurance, and subject to the definitions, terms, conditions, and exclusions set forth herein and limits of indemnity, this insurance provides coverage as shown."

19. Under Section 1 of the Policy ("Section 1"), the applicable Insuring Agreement states that, "[u]nless limited or endorsed otherwise, this insurance indemnifies the Named Insured against any loss occurring subsequent to the Insurance Effective Date and causing the unavoidable: (1) Cancellation, Curtailment, Postponement, Removal to Alternative Premises, or Abandonment of the Event; or (2) non-appearance of a principal speaker, entertainer, or the like . . . or (4) Enforced Reduced Attendance . . . arising from an unexpected cause beyond the control of the Named Insured."

20. The Declaration Page of the Policy defines RSNA as the "Named Insured."

21. The Policy identifies the Event as the singular event covered under the Policy, and specifically provides that Section 1 has a $30,000,000 limit of indemnity.

22. "Cancellation, Curtailment, Postponement, Removal to Alternative Premises, or Abandonment" are defined in the Policy as "the inability of [RSNA] to open, keep open, or otherwise maintain the Event in whole or in part for its original published duration and scope."

23. "Enforced Reduced Attendance" is defined in the Policy as "some of the _expected_ delegates, attendees, exhibitors and visitors being prevented from arriving at an Event solely and directly as a result of the same specific cause, which is beyond their control and is not otherwise excluded" (emphasis added).

24. Additionally, the Policy includes a "Communicable Disease Exclusion" which has two total paragraphs. The first paragraph provides that "[t]his insurance does not cover loss arising directly or indirectly as a result of any communicable disease or the threat or fear of communicable disease (whether actual or perceived)" (the "Exclusion"). The second paragraph sets forth the following exception to the Exclusion (the "Exception"):

<pre>                This exclusion shall <u>not</u> apply unless prior to or simultaneous with the loss
                arising, the communicable disease is declared an epidemic or pandemic by
                the World Health Organization (WHO) or by Federal or Local
                Government Agency.  <u>However, any threat or fear of communicable
                disease, whether actual or perceived, is excluded</u> (emphasis added).</pre>

**B.**      <u>**The Event, the Loss, the Cancellation and Defendants' Coverage Determination**</u>

25.      RSNA's annual conference is the world's largest conference for the radiological community. The conference focuses on updates in radiological science and research, as well as best practices and techniques. Attendees include physicians, researchers, allied health professionals and students in the field from around the world. Inclusive of registrants, speakers, exhibitors and RSNA staff, RSNA expected approximately 51,800 people to attend the Event, with approximately 719 exhibitors renting approximately 443,700 square feet of exhibitor space.

26.      Prior to May 26, 2020, RSNA was made aware of various Travel and Mass Gathering Restrictions by federal, state and local authorities, as well as by employers of attendees and exhibitors for the Event.

27.      On May 26, 2020, RSNA notified Defendants and issued a public announcement formally cancelling the Event based upon the Travel and Mass Gathering Restrictions and the resulting likelihood that these restrictions would: (i) render the Event illegal; or (ii) otherwise significantly depress registrations for the Event.

28.      On May 26, 2020, Defendants, through their adjuster, sent an e-mail to RSNA, requesting additional information and documents.

29.      Between May and October 2020, RSNA responded to Defendants' various requests and provided certain documentation to support its claim for indemnification as a result of the losses incurred in connection with the cancelled Event.

30.      On November 20, 2020, Defendants, through their adjuster, sent a letter to RSNA with their coverage determination (the "November 20 Coverage Determination Letter"). A true

and correct copy of the November 20 Coverage Determination Letter is attached hereto as <u>Exhibit B</u>.

31. In the November 20 Coverage Determination Letter, Defendants relied on the "Communicable Disease Exclusion"—including both the Exclusion and the Exception to the Exclusion—and determined that, because WHO declared a pandemic on March 11, 2020, RSNA's claim was denied in relation to the Event's cancellation on May 26, 2020.

32. On or about December 23, 2020, RSNA sent a letter to Defendants' adjuster, noting the deficiencies within their November 20 Coverage Determination Letter, as set forth herein, and requesting that Defendants reconsider their position.

33. On January 19, 2021, Defendants, through their adjuster, responded to RSNA's December 23, 2020 letter, denying RSNA's request and maintaining all of the positions they set forth in their November 20 Coverage Determination Letter.

34. To date, RSNA has been wrongfully deprived of Defendants fully indemnifying RSNA for all of its losses related to the cancelled Event. Moreover, as a result of Defendants' refusal to comply with their obligations, RSNA is forced to incur additional legal expenses in order to enforce the terms of the Policy.

C. **The Inconsistencies between the Exclusion and the Exception to the Exclusion**

35. According to Defendants, the "Communicable Diseases Exclusion" bars RSNA from recovering for any losses arising directly or indirectly as a result of any communicable disease or the threat or fear of communicable disease (whether actual or perceived).

36. If the Exclusion (*i.e.*, the first paragraph of the "Communicable Diseases Exclusion") was the only reference to communicable diseases in the Policy, there would be very little confusion to an insured as to the lack of coverage in relation to communicable diseases.

37. However, when the Exclusion and the Exception to the Exclusion are read together, they demonstrate a jumbled, disjointed and utterly confusing explanation as to insurance coverage when a communicable disease is at issue.

38. For example, the Exception to the Exclusion includes a combination of internal inconsistencies such that it would be entirely reasonable for RSNA to interpret the same as an extension of coverage that served to nullify the Exclusion. The contradictory terms and vocabulary hurdles include: (i) a double negative (*i.e.*, an <u>exclusion</u> to coverage will <u>not</u> apply); (ii) a qualification (i.e., "unless"); (iii) a vague timing component (*i.e.*, "prior to or simultaneously with the loss arising"); and (iv) another qualification, and another double negative (*i.e.*, "<u>(h)owever</u>, any threat or fear of communicable disease, whether actual or perceived, is <u>excluded</u>").

39. Moreover, Defendants' purported interpretation of the Exclusion and the Exception to the Exclusion offers no realistic path to coverage whatsoever when a communicable disease is at issue.

40. Specifically, according to Defendants' position in their November 20 Coverage Determination Letter: (i) the Policy provides coverage for communicable diseases until there is a declaration of an epidemic or pandemic; but (ii) there would <u>never</u> be coverage when there is an actual or perceived threat or fear of a communicable disease.

41. However, contrary to Defendants' assertion, there is no logical instance where a communicable disease causes a loss but has neither: (i) been declared to be an epidemic or pandemic; nor (ii) created any actual or perceived threat or fear.

42. When read in the aggregate and in favor of RSNA, as the Named Insured, the Exclusion and the related Exception to the Exclusion are impermissibly confusing and

contradictory. As a result, the Exception to the Exclusion should be interpreted as an extension of coverage that serves to nullify the Exclusion when there is a declaration of a pandemic or epidemic.

## COUNT I
## (Declaratory Judgment)

43. RSNA incorporates and restates the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. RSNA fully complied with its respective obligations under the Policy and is therefore entitled to all the benefits and protections afforded by the Policy.

45. RSNA is the Named Insured under the Policy and is therefore entitled to indemnification for all of its losses related to the cancelled Event, up to the Policy's $30,000,000 indemnification limit for the Event.

46. Defendants, pursuant to the terms of the Policy, are obligated to indemnify RSNA for all of its losses in relation to the cancelled Event, up to the Policy's $30,000,000 indemnification limit for the Event.

47. Defendants wrongfully and unreasonably refused, and continue to refuse, to indemnify RSNA for all of its losses related to the cancelled Event.

48. As a result of Defendants' refusal to indemnify RSNA for all of its losses related to the cancelled Event, as Defendants are obligated to do for a covered event under the Policy, RSNA suffered—and will continue to suffer—significant harm. The full extent of damages sustained by RSNA will be determined according to proof at trial.

49. This matter is ripe for adjudication because there is an actual, justiciable controversy between the parties as to their respective rights and obligations under the Policy with respect to the extent of coverage and indemnification for the cancelled Event.

- 9 -

VP/#42037184

50. All necessary and proper parties are before the Court.

51. Pursuant to 28 U.S.C. § 2201, RSNA seeks a judgment declaring that Defendants have a duty to indemnify RSNA for all of its losses related to the cancelled Event, up to the Policy's $30,000,000 indemnification limit for the Event.

WHEREFORE, RSNA prays for the following entry of judgment in its favor and against Defendants:

(a) A judgment declaring:

(i) That Defendants have a duty to fully indemnify RSNA for all of its losses in connection with the cancelled Event;

(ii) That Defendants are in breach of the Policy; and

(iii) That Defendants must pay for RSNA's attorneys' fees, costs and expenses in connection with this action;

(b) Awarding damages in the amount of RSNA's losses, including attorneys' fees, costs and expenses incurred, and to be incurred, in connection with the cancelled Event, in an amount to be proven at trial;

(c) Awarding such other and further relief allowed by law; and

(d) Awarding any other and further relief this Court deems just and proper under the circumstances.

## COUNT II
### (Breach of Contract)

52. RSNA incorporates and restates the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

53. Defendants have a contractual duty under the Policy to indemnify RSNA for all of its losses related to the cancelled Event, up to the Policy's $30,000,000 indemnification limit for the Event.

54. The Policy is a valid and enforceable contract.

55. In exchange for the payment of premiums, Defendants agreed to be bound by the Policy, including fully indemnifying RSNA for all of its losses related to a claim such as the cancelled Event.

56. RSNA is the Named Insured under the Policy and, therefore, is entitled to have Defendants fully indemnify RSNA for all of its losses related to the cancelled Event.

57. RSNA fulfilled all of its obligations under the Policy.

58. On or about May 26, 2020, RSNA submitted its Notice of Claim regarding its losses, and thereafter demanded that Defendants indemnify RSNA for all of its losses related to the cancelled Event, as a covered claim under the Policy.

59. All conditions necessary under the Policy for RSNA to receive full indemnification for all of its losses related to the cancelled Event have been met or have been waived by Defendants.

60. Defendants breached their contractual obligations as set forth in the Policy by refusing to fully indemnify RSNA for all of its losses related to the cancelled Event, up to the Policy's $30,000,000 indemnification limit for the Event.

61. As a direct and proximate result of Defendants' actions, RSNA sustained and may continue to sustain significant damages and harm in an amount to be determined at trial.

WHEREFORE, RSNA prays for the following entry of judgment in its favor and against Defendants:

    (a) A judgment finding Defendants in breach of the Policy;

    (b) Awarding damages in the amount of RSNA's losses, including attorneys' fees, costs and expenses incurred, and to be incurred, in connection with the cancelled Event, in an amount to be proven at trial;

    (c) Awarding such other and further relief allowed by law; and

Case: 1:21-cv-01265 Document #: 1 Filed: 03/05/21 Page 12 of 12 PageID #:12

- 12 -

  (d)  Awarding any other and further relief this Court deems just and proper under the circumstances.

**RSNA DEMANDS A JURY TRIAL ON ALL TRIABLE CLAIMS.**

Dated: March 5, 2021        Respectfully submitted,

                RADIOLOGICAL SOCIETY OF NORTH AMERICA, INC.


                By: /s/ Brian W. Ledebuhr
                    One of Its Attorneys

Brian W. Ledebuhr, Esq.
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
Telephone: (312) 609-7500
Facsimile: (312) 609-5005
bledebuhr@vedderprice.com

- 12 -

VP/#42037184