IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RADIOLOGICAL SOCIETY OF NORTH AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21 C 1265 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, SEVERALLY SUBSCRIBING TO POLICY NO. RSC-1224 and known as ARGO MANAGING AGENCY LIMITED AND MARKEL SYNDICATE MANAGEMENT LIMITED, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Radiological Society of North America, Inc. has brought a two count amended complaint against defendants Those Certain Underwriters at Lloyd's of London, Severally Subscribing to Policy No. RSC-1224 and known as Argo Managing Agency Limited And Markel Syndicate Management Limited ("defendants") seeking a declaration that defendants owe a duty to indemnify plaintiff under an event cancellation insurance policy issued by defendants to plaintiff (Count I) and damages for breach of that policy. Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. For the reasons described below, the motion is granted.

## BACKGROUND

Plaintiff is an Illinois not-for-profit corporation. Its annual conference is the world's largest conference for the radiological community. The conference focuses on updates in radiological science and research, as well as best practices and techniques. Attendees include

physicians, researchers, allied health professionals, and students in the field from around the world.

Plaintiff's 2020 conference (the "Event") was scheduled to be held between November 17, 2020, and December 4, 2020, in McCormick Place in Chicago, Illinois. Plaintiff expected around 51,800 people to attend the Event, with nearly 720 exhibitors renting approximately 443,700 square feet of exhibitor space.

Plaintiff purchased an Event Cancellation Insurance Policy (the "Policy") from defendants covering the period January 29, 2020, to December 4, 2020, to provide cancellation insurance for plaintiff's 2020 Event. The Policy requires defendants to indemnify plaintiff for all covered losses arising from an unexpected cause beyond plaintiff's control and which resulted in (among other things) the unavoidable cancellation of the Event. The Premium Proposal Page indicates that plaintiff elected not to purchase the optional additional coverage for "communicable disease."

On May 26, 2020, plaintiff issued a public announcement formally cancelling the Event as a result of travel and mass gathering restrictions instituted by federal, state, and local authorities, advising the public that the restrictions would render the Event illegal. That same day plaintiff notified defendants of its claim. After plaintiff supplied defendants with some additional information, defendants denied coverage in a letter dated November 20, 2020, indicating that they had determined that plaintiff elected to cancel the Event as a result of a communicable disease, and that, "We determined the Event Cancellation was caused directly or indirectly as a result of a communicable disease (Coronavirus / COVID-19), which was declared as a pandemic by the World Health Organization (WHO) on March 11, 2020."

## **DISCUSSION**

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to sate a claim. Such a motion challenges the "sufficiency of the complaint." Berger v. Nat. Collegiate Athletic Assoc., 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Aschroft v. Iqbal, 556 U.S. 662 (2009) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendants argue that the plain wording of the policy defeats plaintiff's claim for coverage. "Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." Thor Equities, LLC v. Factory Mut. Ins. Co., 2021 WL 1226983, at *2 (S.D.N.Y. March 13, 2021). It is a fundamental principle of New York law[1] that "contracts are construed in accord with the parties' intent." Id. Because the best evidence of the parties' intent is what is written in the agreement, the court "must give effect to the intent of the parties as expressed in the clear language of the insurance contract, and interpret the contract according to common speech and consistent with the reasonable expectation of the average insured." Id. (internal quotations and citations omitted).

"Under New York law, a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain language of its terms." Id. at *3. Language is unambiguous if it has a "definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." Id. Ambiguity is created when, read as a whole, the contract fails to disclose its purpose and the parties' intent, or when its terms are susceptible to more than one reasonable interpretation. Id. The test to

---
1 The policy provides that it is governed by New York Law.

determine if an insurance contract is ambiguous "focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech."  Id. (internal quotations and citations omitted).   But, provisions of a contract are not ambiguous merely because parties interpret them differently.  Id.

In the instant case, the parties dispute whether a Communicable Disease Exclusion in the Policy bars plaintiff's claim for coverage.  The exclusion provides:

**COMMUNICABLE DISEASE EXCLUSION**

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

> This insurance does not cover loss arising directly or indirectly as a result of any communicable disease or the threat or fear of communicable disease (whether actual or perceived)
>
> This exclusion shall not apply unless prior to or simultaneously with the loss arising, the communicable disease is declared an epidemic or pandemic by the World Health Organization (WHO) or by Federal or Local Government Agency. However, any threat or fear of communicable disease, whether actual or perceived, is excluded.

ALL OTHER TERMS AND CONDITIONS REMAIN
UNCHANGED

According to defendant, this provision is capable of only one reasonable interpretation: the Policy does not provide coverage for, (i) losses arising as a result of any communicable disease that has been declared an epidemic or pandemic prior to or simultaneously with the loss arising, or (ii) losses arising as a result of threat or fear of a communicable disease, whether actual or perceived.   Because plaintiff concedes that it cancelled the Event as a result of travel and gathering restrictions that were in effect after COVID-19 was declared a pandemic by the WHO, defendant argues that plaintiff's claims are barred by the plain language of the policy.

Plaintiff, on the other hand, argues that the language is ambiguous and capable of being

interpreted as providing coverage for cancellation as a result of a communicable disease that has been declared a pandemic. According to plaintiff, the first paragraph of the exclusion broadly denies coverage for a loss caused by a communicable disease whatsoever. Plaintiff then argues that the second paragraph is an exception to the first, and "allows coverage in the rare instance that a loss is caused by a communicable disease that had been declared an epidemic or pandemic," and that the exclusion and exception both make clear that the threat or fear of a communicable disease is excluded from coverage.

Although it is poorly written in the negative, the court concludes that the exclusion is not ambiguous and, when given its clear meaning, bars plaintiff's claim for coverage. The operative (or disputed) language in question is the first sentence of the second paragraph which provides that the exclusion from coverage for losses cause by a communicable disease "shall not apply unless prior to or simultaneously with the loss arising, the communicable disease is declared an epidemic or pandemic by the World Health Organization (WHO) or by Federal or Local Government Agency." Put simply, this phrase, which is a limitation on the first paragraph, not an exception thereto, means that the exclusion does not apply unless the communicable disease has been declared a pandemic. Rewritten in the positive, the phrase would be the "exclusion applies only if the communicable disease has been declared a pandemic." Either way, the obvious intent is that losses caused by a communicable disease that had been declared a pandemic are excluded from coverage.

Plaintiff's proposed interpretation of the exclusion is simply inconsistent with the plain wording. To reach plaintiff's interpretation would require the court to substitute the word "if" for the word "unless" so that the operative language would read: "This exclusion shall not apply [if]

5

prior to or simultaneously with the loss arising, the communicable disease is declared an epidemic or pandemic by the World Health Organization (WHO) or by Federal or Local Government Agency." But, "unless" does not mean "if." A simple Google search of "if or unless" reveals that unless means "except if." Learn English, https://www.ecenglish.com/learnenglish/lessons/unless-and-if (last visited July 8, 2021). Substituting "except if" for "unless" results in the exclusion applying to losses resulting from a communicable disease that had been declared a pandemic. Consequently, the court concludes that the exclusion is not ambiguous, and that it applies to plaintiff's claims. As a result, defendants' motion to dismiss is granted.

## CONCLUSION

For the reasons described above, defendants' motion to dismiss [Doc. 14] is granted.

**ENTER:**

_____
**Robert W. Gettleman
United States District Judge**

**DATE: July 8, 2021**